Good morning, and may it please the Court. Peter Afrasiabi on behalf of Plaintiff Appellant Cloud. Your Honors, there are two major issues in this appeal. One is with respect to the District Court's taking of the jury's verdict of $2 million. And the other is with respect to the District Court's denial of exceptional status for purposes of Plaintiff's fee motion. I'll take them in order, but I'll turn first to the taking of the $2 million verdict. The narrowest place to start, I think, in which this Court can and should reverse, is that with respect to the three trademarks that issued after April of 2015, those the District Court took on the Rule 59 motion. And there, I think, it's very, very clear, under this Court's opinion of Carroll, the D.C. Circuit has that we cited has the same standard, that the button of manifest injustice cannot be used to undo something that could reasonably have been raised before. And so this argument assumes, just completely for the sake of argument, that ---- Well, tell me this. Yeah. How is it possible that two counsel and one judge went down the wrong path on the statute? We didn't go down the wrong path, Your Honor. Why not? Because the statute doesn't require registration. Tell me why the statute doesn't require registration under the counterfeit statute. Two reasons. The statute simply requires that a mark be registered. And trademark law has long been clear that the ---- for purposes of trademark rights, the application date is what controls. And so the mark just has to be registered. You can't go to trial on an unregistered mark. But the mark was registered when we went to trial. The statute doesn't say that it must occur before. But, Your Honor, even if it does, here the evidence ---- Well, in terms of the two, the alleged infringement takes place in April. Is that correct? Well, yes and no. Yes, the evidence showed the sting operation in April 2015. But the evidence the jury heard that stands beneath this verdict was that defendant was a known counterfeiter. They were ---- there was a container being unloaded that day that the sting operation happened. They boasted that they sell lots of product at a cheap discount. That's totally not answering the question. The question is when is the evidence of infringement? Is it during April of 2015? Yes, absolutely. Okay. It's during April of 2015. Okay. And there's two marks registered before that, correct? Correct. And if registration has to be in effect at the time in order to recover for counterfeiting as opposed to regular Section 43A trademark infringement, then we would be looking just at the two marks, correct? No, because April 2015 isn't the only evidence that the district court, that the jury heard. I have a question. What was the other evidence that there was infringement beyond that period of time? A known counterfeiter who was unloading a container on the day of the sting operation, Your Honor, and this is pages 62 and 71 of the testimony, the defendant said they bought in bulk and they sold large quantities of this product. That's what they told the investigator. The jury, they told the opposite story. They chose to say no. We'd never heard of cloud before. First time we ever got it was that day. We just found it from some mysterious person. Do you have any evidence of any dates before the sting operation? No. Okay. No. The sting operation is the first date of evidence of an actual sale, but there is evidence on page 35 and 36 that they were a known counterfeiter of these products. That obviously predates April 2015 because that was known and was the basis for going and doing the sting. But does that mean that they were, um, they were actually, um, selling or this counterfeit product after the, you registered your product in June and September of 2015, if that's a requirement. Absolutely, Your Honor, because the evidence that the jury heard was that this was an ongoing operation. They didn't ask for the jury to give us a date specified to it. They chose to say, we never did it. And they got caught lying. That's the willfulness finding the jury was entitled to conclude. And the facts have to be interpreted in a way that under that supports the jury's verdict on willfulness. That this, they lied to the jury in June of 2016. There's no reason to, for the jury to have concluded that they weren't still doing it. I still don't. I'm looking for evidence, not argument. I mean, I understand what was argued, but I'm looking for evidence. So point me to that. Okay. Well, the evidence that I'm pointing to, Your Honor, is that they said they sold in large quantities to the investigator. That's page 63 and 64 of the transcript on June 7th. And that relates to the April 2015 encounter. That's what they said on the day. Yes, that they sold lots of it. So there's one piece of evidence. Yep. And at trial, another piece of evidence is that they said the opposite. They had never heard of cloud. That's page 80. But that's not evidence. Of anything you have of any affirmative sale or counterfeiting. No, but that shows they were lying. And so that's why we cited the doctrine false in one, false in everything. Because that engrafts onto their testimony that they claimed to the jury they never sold after April 2015. This just happened. But having been caught lying on the other stuff, the falsest in UNO doctrine applies. The jury was entitled to hear their testimony that, oh, yeah, we only sold on April 2015 and disbelieve it. Their credibility. Do you have any records? Do you have any other witness? Do you have any witness for that? No, no. Well, their testimony that they were lying under oath before the jury that they never sold after April of 2015. And when the jury concluded willfulness on a he said, she said, it concluded they lied. So if one lies on that, their credibility is at question. The jury disbelieved the contention that it was a one-time event. That means it's an event that continued going. So if you're wrong on your interpretation of registration, because there has to be a difference between counterfeiting and infringement and the statute has made that distinction, if you're wrong on registration, then aren't we really looking at the registrations that were in March 2015? No, because the district court took away the three that came after on the basis of Rule 59's manifest injustice standard. And that as a matter of law cannot exist on this record. This court has said Rule 59 cannot be used when an argument could have been raised before. That's as a matter of law. This argument could have been raised at Rule 12, Rule 56. Well, it seems as though it could have been raised on motion for summary judgment by you. One or the other of you. One or the other. I mean, but Shisha, they moved for, they're the ones who moved for a 59E relief on the basis that the product wasn't registered at the time. So they're the ones who raised it for the first time on 59E. But Shisha could have raised it earlier. They could have raised it, they could have made that a defense in their, in their answer to the complaint. In the answer to the complaint, in our initial disclosures, we said this is counterfeiting. We want up to $2 million. They could have said something then. They did move for summary judgment, and they made legal challenges to all the claims. They didn't make this one. We moved for summary judgment on liability. They didn't oppose on that basis. But did, let me ask, stop, let me. I'm trying to understand how we got here. Missed double little I in the statute. That seemed to be the statute that the judge was referring to, correct? Which is 116B, little two I's. The one about identicality or substantially indistinguishable, which of course relates to the Olympic and other marks. Isn't that the statute that was used at summary judgment? Yes, Your Honor. 1116 was used at summary judgment. No, 1116BII. Yes, Your Honor. Okay. That was the statute. So why didn't you tell the judge that was the wrong statute? Well, the way we interpret the statutory language, there isn't the temporal modifier. I mean, I think the district court was wrong. No, that's little one, not II. But the double I, Your Honor, is referring to this other section of Title 36 that's not applicable. Right, but isn't that the statute that was being argued over about identicality and substantiality? I don't think it was. We weren't arguing over whether Title 36 applies. I think that's the wrong provision. The provision is a provision above. I understand that. But that was, of course, one of the reasons the judge granted the motion because that's the statute the judge was relying on. And in the summary judgment, you see that. So that's why I'm trying to understand why nobody said red flag problem. Well, what did the papers argue? Did they argue under that section or not? Because this is another case where the judge decided on the papers in chambers. So what was the statute that was raised in the papers before the summary judgment? It was 11. We argued for summary judgment of liability for counterfeiting, for false designation of origin, for everything. They argued the whole statute doesn't apply because of interstate commerce, and they had other arguments. They never made the argument in the direct, in the motion, in the directed verdict motion at summary judgment, when it's the same argument. I mean, their argument is on the face of these trademark registrations, they issued after April of 15. We moved for summary judgment saying here are the five trademarks. The infringement occurred in April of 15. I mean, it's an argument that it absolutely could and should have been raised. And by the way, Your Honor, the district court at page 8 of the record said this should and could have been raised earlier. And that's what the district court concluded. So when the district court made that finding, it necessarily undercut the basis for Rule 59 relief on as to those, as to those two trademarks. Three trademarks, sorry. So you had a number of other claims in your complaint. What happened to all of those? On all of those claims except for copyright, we received a summary judgment of liability. So the same fact pattern gives rise to counterfeiting liability, false designation of origin, trademark, State unfair competition and State statutory, the 17200 claim of liability. There's not liability. Well, that depends on how you interpret the statute in terms of the registered mark, because you might have had summary judgment with respect to infringement, which is different than liability for counterfeiting. Do you agree with that? Well, yes. I agree with that, Your Honor. So you have two different things. Sure. But the liability finding was predicated for the false designation of origin and for the State claims, the 17200 claim, for example, and the State trademark claims. They don't require a Federal registration at all, and neither does Federal. Well, that's not we don't care about all those because we're only talking about counterfeiting here. For the damages, yes, absolutely. Well, for liability, too, because you have to figure out whether you have a counterfeiting claim and what kind of damages you can get. You can get statutory damages, of course. You can only get statutory damages for counterfeiting. The liability was as to all claims. The trial was then just on damages for counterfeiting. I understand. But now the judge is saying he misunderstood what was required. No, he only misunderstood as to counterfeiting. The only one. I understand. That's why I just stick to counterfeiting. I'm excited about everything else because we're only talking about the counterfeiting damages here that are really up in the air and how they came to be and, you know, what the pattern is. So in counterfeiting, you have two questions. One, do you need to have a registered mark at the time of the counterfeiting? And then, two, on what type of goods must the counterfeiting take place? Those seem to me to be two legal issues. I think that's right, Your Honor, yes. Okay. And your view is the counterfeiting doesn't need to have a registered mark at the time of counterfeiting. Is that right? Correct. Our argument is that the registrations, well, here we did have two, but we haven't got to those. On the three that were registered after April 15, those are appropriate because the statute doesn't have that temporal modifier. And even if the statute is to be interpreted to have that requirement, the evidence here showed an ongoing pattern of sales. So we're past April 15 anyway. That's the argument, Your Honor. And do we have evidence as to actual sales that are after these approximately what, June and September registrations on the charcoal container? Not beyond anything I've said already, Your Honor, with respect to how the evidence should be interpreted from the jury's willfulness finding. So as to those three, that's the issue, Your Honor. As to the other two that did predate, there our contention is that those were taken in the directed verdict motion as to $800,000 of the $2 million, and it's the position that those registered marks did issue before April of 15 on the related hookah water, which sits beneath the hookah heat management device. The question I have on that is that those are registered in a different category. Of course, they're registered under food products, the additive dye or the water, whatever it's called, whereas the registrations that came after are tobacco products. So that raises yet another statutory interpretation as to whether the way you interpret this is really the same class of goods and not like you would in an infringement context, which is substantially the same or potentially misleading or whatever. So what is your response on that? It should be interpreted the same way, because the criminal provisions have this one-to-one relationship that the defendant engaged in counterfeiting, the counterfeiting must be of goods specifically for which the mark is registered. That's a very tethered one-to-one relationship for criminal liability. That same language is not used in the civil provisions when you compare 1116 to 18 U.S.C. 2320. But you do have that language that says for such goods or services sold, and the question is if the goods or services sold under that mark, because at that time you only have a mark for food products, how do those other physical products fall into that category? Because that language for such goods should be interpreted the same way it has for a century, really, with respect to trademark claims, and it's exactly what you said, Judge. If they're related products, the trademark holder's rights are not limited to very narrow classification. And this is because, and we cited the cases to the district court at 4 ER 548, but the classification codes are for internal purposes. And the law has long said, before the counterfeiting laws were even enacted, the law has said that such goods should not be determined to mean same goods, even though I think we have a case that says same goods. Such goods is not same goods. Such goods is the goods being offered or sold by the party who has the trademark. And that party, if they have related products, if the products are related, then their rights extend to the related products. Well, then what good would it be to require having to have a registered mark under 1116 if we adopt your interpretation? Well, you have to have a registered mark. We still have a registered mark. Right. I understand. But if it can relate to any goods, the registration becomes more than a registration. It becomes basically an exclusionary shield, right? No, because it has to be related. The law is clear, chapter and verse, that they have to be related. A party can't just take protection over cars and suddenly say that the act of selling pens is related. I mean, the law is very clear about relatedness, and this is well established in 1114. But where else do you get the for such goods or services in the statute? I don't think you get the exact same words anywhere else. You get in 1114 on the substantive false designation claims. Right, but that's a different category than a counterfeit claim. Correct. So that's why I'm saying do we have any other place in the statute that we should be looking for this language for such goods and services sold? No, you don't. But I would urge the court to look to the Sixth Circuit case in Lackas where the registration was not on exactly what the defendant was charged with in civil counterfeiting, and the court said they're related. Going back to one of the things you conceded, you concede that they're not the same goods, correct? Correct. No, I mean, the registration was for later. So let me stop you there. And going back to Judge Wardlaw's question, then, if we do have case law that requires the same goods, are you arguing that that definition should be expanded to include the same type of goods, or what are you arguing? That it includes related goods. And here the factual evidence of how these two are related was given to the jury. The heat management device sits above the water. I mean, it's not a question of unrelated products. These products are actually used together, the water and the heat management device. Are you saying it doesn't matter whether it's charcoal or flavored water or a canister? It doesn't matter if it's hookah-flavored water. Yes, not if it's just sort of like general water or something, but this was all for hookah products. I've learned a lot about hookah products in the last several months, Counsel, so I'm just learning. I don't know everything, but certainly this relationship is interesting to me in how the statute ultimately is defining one. Yes, Your Honor. And I suppose the final point, I see I'm very low on time, but I do want to make the final point, which is even if the $2 million verdict is gone, is taken, Cloud still prevailed on liability at summary judgment on the non-counterfeiting claims, and it received an injunction. So all you wanted was an injunction, so you got no money. You got the injunction, so that would make you a prevailing party, but there was no word of damages on all those other claims. No, because the only damages we sought at trial were statutory damages for counterfeiting. That was how the case was tried. We didn't pursue damages on the other claims. We stood on liability and the injunction that would flow. Exactly. So even if you're the prevailing party, because you did get one of your ultimate pieces of relief, would it need to go back so the district court could determine, you know, proportionality and all those kind of things with respect to the fees, in your view? No, Your Honor, for this reason. This Court's opinion in TrafficSchool.com, which was under the much harder exceptional case standard, pre-Octane Fitness and pre-Sun Earth from this circuit, that case held where you had no damages, just a liability finding and an injunction, and willfulness there, just as we have a willfulness jury finding here. There this Court held that as a matter of law it was exceptional. So I think this Court needs to reverse the district court's conclusion that Cloud didn't prevail and in light of TrafficSchool conclude it's exceptional as a matter of law. The only question now is just to calculate the fees. That's it. That's all that's really left on that side of it. And we'd be happy to have that before the appellate commissioner here or if it gets sent back, it gets sent back, but it's just a calculation at this point. Thank you. No, go ahead. I did have one just clarification. Which claims did you prevail on? On, well, if we take out the counterfeiting for purposes of this argument, that's the Federal counterfeiting. We prevailed on Federal trademark infringement, the liability finding and summary judgment, and all of this was the liability finding and summary judgment. Federal trademark infringement, Federal false designation of origin, State unfair competition claims, State counterfeiting claims, and then the State statutory unfair competition. That's the 17-200 from California. The only one of your claims that you didn't prevail on at summary judgment was the copyright. Correct, Your Honor, yes. Another way to say it.  Yes. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Louis Turan. I represent the appellee and the cross-appellants in this case. I would like to touch on the issue of statutory damages with regards to counterfeiting. Do you know what? You've created a lot of problems here in this case. And you're not exactly, I mean, I'm looking at, I don't know if you've represented Shisha Land throughout this litigation, but we wouldn't be here today if you had raised and prevailed on this registration argument at a motion to dismiss stage. So why shouldn't we just hold you responsible for all of this and just wipe out this award and say you're liable, you blew it, and you don't deserve to have won on Rule 59E? So let me speak to that. Because that would be justice. Yes. Let me speak to that. Let me speak to that right now. When the complaint was filed, from the very beginning of the case, there were, I think, five or seven items that were asserted to have been infringed. These included the five marks and, I think, a trade dress and another phrase that they had on the package. Of the seven items, only two were registered as identified in the complaint. The rest, the five of the other items, were unregistered. So from our perspective, from our view, this case was primarily a case of infringement of unregistered marks. And then we went throughout litigation, and then in summary judgment, when they filed summary judgment, their issue was simply as to liability. It was only with regards to 43. It was liable if you had raised and prevailed on the registration claim. This judge undid his summary judgment ruling under a 59E motion, which is, I've never seen this before. It's unheard of. And it's so easy to know. You're admitting it right now. You knew from the outset what was registered, what wasn't registered, what type of product was covered, what type of product may not have been covered. So the issue of registration is not an element that is required for liability. The issue for registration is only an issue that is required for statutory damages of counterfeiting goods. You can still get actual damages, but if you're going for statutory damage, your statutory damage has been carved out as, you know, something that is available for the most egregious types of infringement that there is, where there's no nuance, right, somebody infringing the exact same type of goods. But what did the district court say on summary judgment on counterfeiting, not on all the other things? Right. On liability, on the liability of counterfeiting, I think the district court judge said that, yes, there was a mark. They had an ownership interest to the mark. There was use of the mark that caused likelihood of confusion, and there was no authorization. There was no permission. But then right there you've got a big legal issue because in the counterfeit world, which is different than likelihood of confusion world, which is your normal infringement claim, you already right there had a legal issue of, well, does it apply? Is there liability where the so-called product wasn't the same as what the registration was? So before you can get to whether there's counterfeit, you know, what the statutory damages are and whether it's willful and how many times, et cetera, don't you have to know what your counterfeit claim is? How can you get a summary judgment on counterfeit if you don't know whether the counterfeit goods qualify as under the counterfeit definition? So the way that the summary judgment motion was framed, it was primarily as to all the claims that they had. Right. Now, I understand. So I'm only asking about the counterfeit. How do they get ‑‑ if you had said to the judge at summary judgment, look, they only have two registered marks. So if there's going to be liability for counterfeiting, it needs to be on the same goods. Or maybe it doesn't be. Their argument is that it doesn't. But was that ever brought up to the judge? That wasn't brought up to the judge, Your Honor, not by us and not by them. Okay. So that's really the ‑‑ that's the crux of the issue here because you go through that, then you go through a whole trial. Right. And at that point, it's not until after the trial, right, that you raise this issue. So the issue of the registration, one, would not have stopped this case from going to trial. Right? Because even if we had brought up that issue of lacking registration ‑‑ Well, they gave you notice that they were going to go for statutory damages. And your whole claim right now in front of us is that, oh, this issue is irrelevant. Statutory damages. It's the statutory damages. Why didn't you say right then and there before you had the whole trial? Well, they only registered it as of this time. And I just also want to remind ‑‑ you must have read what the judge said about your conduct on your request for attorney's fees. Right. Yes. That there's no way in which the manner that defendant litigated this case could be considered appropriate. I mean, you can tell he's seething at this point. I don't even understand why he granted your 59E motion. So once again, Your Honor, the issue of raising the registration, I don't believe would have stopped this case from going to trial. Because even if we had raised that ‑‑ No, it wouldn't because ‑‑ Because we would have gone to trial on the issue of unregistered marks. And they would have sought actual damages. Why do you need a trial? The marks are either registered or they're not. But on counterfeiting, but on the counterfeiting claim, which is different than ‑‑ you don't have to have registered marks to have infringement. We know that. But on the counterfeiting claim, if you are right, it never would have gone to ‑‑ that claim would never have gone to trial. But meanwhile, we have a summary judgment where that doesn't get addressed. We don't have a motion in limine to strike all this now because counsel has become more learned on the subject. We don't have a change in the jury instructions. It goes all the way to the end. And that's what's extraordinary here. So why would we now upend this like years of litigation and a trial when it was not raised? So once again, going back to the primary issue in this case from our perspective, that it was an infringement of unregistered marks. And even in their summary judgment motion, it was strictly related to the issue of liability, of infringement. They never once made a claim in their summary judgment motion that they had a registered mark. They only made the argument that they had an ownership infringement. Well, they did. I mean, it's in the complaint. They were up front in their complaint about what was registered and what was not registered. So when was the very first time that you raised your hand and told the judge about this problem? When they selected statutory damages over actual damages. And they're entitled to do that. By meaning? The point is, right? And they're entitled to make that selection at any point in time, per statute, at any point in time before a final judgment is issued. And they made that selection. They explicitly said, we are not seeking actual damages. We are now seeking statutory damages. They made that selection at the end of their case in chief. And at that point? At that point, at that point. And so that's what went to the jury, right? Well, statutory damages went to the jury at that point. Right. Everything related. But at the point they make that is at the end of their case in chief, right? So now we still have your case. We have the rebuttal case. We have the jury instructions conference. We have the instructions to the jury. There's like 22 places you could have raised your hand and said, stop, because you can't get statutory damages. Counselor, you're saying that you were confused that they were going to go for statutory damages? You thought that they were going to go for actual damages, which would have been what? You know, a $20 hookahs? That's not necessarily true. Fifty of them? They truly believed that we were mass infringers. And, you know, if you look at the jury instructions that were presented before the trial, it included your instructions for all the causes of action, including actual damages. Well, that would make sense. But then you're saying that at least at the time they said we're going for actual only. Yes. I mean, excuse me, for statutory only. Yes. Then did you move to dismiss the case at that point? I did, Your Honor. Okay. And what did you say? I moved for a directed verdict at that point. And then the district court judge said to me, well, we've got, at that point, I believe, you know, we have half a day of trial left. And the district court judge at that point said, well, hold on to that. We'll deal with that tomorrow, which is the day after. And then the case ended, and the district court judge said, okay, now you can file your motion in writing. And we did. And remind me the basis for the directed verdict. It was statutory damages. It didn't qualify for statutory damages. And from our perspective, this entire case was about an infringement of unregistered marks. That was our perspective. And then at the very end, they said statutory damages, and that's when we raised the issue. And now when we filed our directed verdict, I mean our motion, a post-trial, we included the issue of the three registered, post-registered marks. And the judge came back and said you should file a motion for reconsideration. And I believe that that was because he had realized that in the summary judgment order, he had referenced the wrong statute. And so I believe he wanted to correct that error, so asked us to file a motion for reconsideration so that he could correct that post-trial. I think that's why he asked us to do a motion for reconsideration. But we had raised both issues, the pre-registrations and the post-registrations in our first post-trial motion. And at the summary judgment stage on liability, did you say that there can't be liability because on the registered marks, they don't correlate to the alleged infringing product? Did you say that at summary judgment? Well, I'm not entirely ---- Well, it's either yes or no because you either did or you didn't. No, no, I didn't. And the reason is I didn't say that there's no liability because there's no registered marks at the summary judgment case because I don't know if that's necessarily true. I think the issue of registered marks is only applicable, I believe, for statutory damages. But didn't they give them liability on counterfeiting? Yeah, I believe the summary judgment included counterfeiting. So how can you get liability on counterfeiting if you ostensibly don't fit in the counterfeiting statute? Okay, so the counterfeiting that was defined by the judge referenced the erroneous record, I mean, the erroneous section of the statute. But even if you knew in your head what counterfeiting was, wouldn't you want to say at that point you can't even have a claim? Right. It would be a motion to dismiss. Right. So in my head, the issue of registration is only applicable to statutory damages because that is one of the required elements for statutory damage. And in summary judgment stage, they hadn't made clear whether they were going to seek statutory damage or any kind of damages. They were simply asking for a finding of liability. And I don't know if it's necessarily true that for liability of counterfeiting you have to have a registered mark. I think you can have liability of counterfeiting for unregistered marks. Where do you get that from? Your Honor, this is ñ well, I mean, that issue has not been raised. Well, it's relevant. It's relevant here. It's not in the statute. I'm just trying to understand your source. There is an explicit requirement for a registered mark for statutory damages. Whether the issue of you can have counterfeiting for unregistered marks, that's something that we didn't explore. It wasn't raised by them and it wasn't explored in summary judgment. Summary judgment was strictly related to liability. Now, if I may, Your Honors, I would like to talk about the issue of injunction that was issued by the court. The injunction, I think, was ñ the order of injunction was on abuse of discretion simply because the court found that there was only one instance of infringement in this case, and that was April 10, 2015. There was no finding that there was infringement thereafter. In order to get injunction, as has been established, you have to be able to show factually that there is a likelihood or, you know, that irreparable damages would occur if an injunction is not issued. And that was not done in this case. It was very clear that there was only one case of infringement, one instance of infringement. There was no evidence to suggest that we were going to continue to infringe even after the case unless an injunction had been issued. This was entirely based on a presumption, a probability that, you know, because we infringed once, it's probable or possible that we're going to infringe again. And that is not the standard for an injunction. It requires a factual finding that there is a ñ there is likely irreparable damages absent an injunction. And the judge didn't find that? No, the judge did not find that. The judge based it ñ I don't ñ you know, the order that the judge issued on injunction was very short. It didn't really provide that explanation or that finding. Now, the other issue before my time is up, Your Honors. I would like to bring the issue that we brought up in the cross-complaint, which is, you know, the judge found that the claims for statutory damages lacked merit. I think the judge said that a simple search of Westlaw and Lexis would have revealed that, you know, early on. And then we got punished for that. And I think the onus for that should have been on the plaintiff for raising that claim to begin with. It has been established that, you know, that you can't raise unmeritorious claims. And for us to be hit for, you know, for not raising it on defense as opposed to them being hit with it for not ñ for filing unmeritorious claims to begin with ñ What were the unmeritorious claims I'm trying to get? Statutory damages. It was very clear that they didn't have a registered mark. Statutory damages requires a registered mark. So it is something that they never should have asserted to begin with. Well, they had two registered marks. And they argued that this was a continuance issue and that you were continuing to sell. Well, that was ñ they set the statutory ñ they sought statutory damages for three of their ñ I mean, five of their marks. Two were registered but were not the same goods, right? And then three were unregistered at the time of infringement. And I think the judge indicated that a simple Westlaw or Lexis search would have revealed that those circumstances do not merit statutory damages, right, based on case law, based on Congressís legislative intent, based on the statute itself. I think the judge said this, you know, is clearly not applicable. A simple search would have revealed this. But then the judge blamed us for not raising the issue early on, which I believe it should have been on the plaintiffs for asserting the claim to begin with when it was clear that it lacked merit. I think I'm running out of time, Your Honors. Any other questions? Thank you. Thank you. We took a lot of your time for questions, so I'll give you two minutes for rebuttal. Thank you, Your Honors. In direct response to a couple of points, number one, where we just ended on the injunction, the factual record at trial, which the district court obviously had for purposes of fashioning the injunction, included testimony at pages 30 and 31 about the damage to consumersí health of using counterfeit products they could even kill was the testimony. And at page 34, there was a testimony about the fact that Cloud only sells to authorized dealers because it wants to maintain the reputation and integrity of its brand. So those are the factual, the facts that exist in the record that certainly undergird the injunction. With respect to the assertion made that, you know, they had no idea that statutory damages were a big deal until, you know, like we just asked for it at trial, you know, it's simply inconceivable. In our initial disclosures, which are at page, at ER 81134, volume 8, page 1134, we specifically noted the first thing we argued for was statutory damages on the $2 million. And those are in the initial disclosures, which are in the record. And I apologize. I don't ñ let me grab my paper. There, yeah, 8 ER 1431. Sorry. We asked for $2 million. This is a counterfeiting case where we were denied a deposition on liability because we succeeded in prevailing at summary judgment on liability, even though there was sanctions against them which were affirmed for refusing to show up for deposition. So what happened is ñ Let's just take counterfeiting. In your view, what was the basis for summary judgment on counterfeiting? What was the judge's basis? The judge's basis was that we moved for summary judgment on counterfeiting on all five registered marks. At the time of summary judgment, all five. Yes, you had all of them. Yes. That was the basis, all five of them at summary judgment. If statutory damages have been taken off the table on a Rule 12 motion, motion for judgment on the pleadings, Rule 56, any time before, when you're going against a counterfeiter and you can only prove 20 products specifically and they refuse to give you your records, obviously that changes the optics of litigation. I mean, statutory damages exist from Congress precisely because substantively the law says you can't get records and proofs, so there needs to be a hammer divorced from what are obviously very, very low actual damages that make the cost of litigation impossible. So if this had been taken off the table early, obviously the case would have resolved with an injunction and something else earlier and we would have come up on appeal to question the statutory damages interpretation early on. This is why when the court looks to its case law in Rule 59, manifest injustice as a button to hit Rule 59 is not some way that a court can just do macro equity, just to do what seems right or fair or appropriate. It's tethered. It's not a boundless ability to undo a jury's verdict. It's tethered to the fact that it must only be used if the argument literally couldn't have been raised before, and here of course it could. The district judge himself concluded that it couldn't, should have been raised before. So on that basis, Rule 59 relief just simply isn't available. Thank you. Thank you, Your Honor. Thank you both for coming today. A very interesting case. The case just argued is submitted and we're adjourned for the day. All rise.
judges: McKeown, Wardlaw, Mendoza